**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JTH TAX LLC, d/b/a LIBERTY TAX SERVICES, | Case No.: |
| Plaintiff, | |
| v. | |
| ASHLEY BECKWITH, COURTNEY WILLIAMS and LTS WILMINGTON LLC, each individually and doing business as "TAX TOPIC," | |
| Defendants. | |

**LIBERTY'S VERIFIED COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff JTH Tax, LLC d/b/a Liberty Tax Service f/k/a JTH Tax, Inc. ("Liberty" or "Plaintiff"), by and through its undersigned attorneys, for its Verified Complaint for Injunctive Relief and Damages against Defendants Ashley Beckwith ("Beckwith"), Courtney Williams ("Williams"), and LTS Wilmington LLC ("LTS Wilmington"), each individually and doing business as "Tax Topic" (collectively, "Defendants"), states as follows:

**INTRODUCTION**

1.     Liberty is franchisor of Liberty Tax Service® tax preparation service centers, which are located throughout the United States, including in Delaware.

2.     Until recently, LTS Wilmington was the franchisee for two Liberty franchise territories (collectively the "Territories" and each individually a "Territory") under two separate franchise agreements. Beckwith, is a member of LTS Wilmington, and personally agreed to

perform all obligations under the Agreements, including the post-termination covenants. Williams is the brother of Beckwith, owns or controls LTS Wilmington along with Beckwith, and managed Beckwith's former Liberty Tax franchise locations on a daily basis.

3.     As of January 24, 2023, and possibly as early as January 16, 2023, Beckwith, Williams and LTS Wilmington started doing business as "Tax Topic" and competing against Liberty at one of their former Liberty Tax franchise locations.

4.     Liberty terminated the franchise agreements on September 20, 2022 because Defendants: (i) failed to open an office in either of Defendants' two franchise locations during the 2022 tax season; (ii) failed to continue active operations during tax season; (iii) failed to maintain required business hours off-season; (iv) failed to submit a budget or profit and loss statement; and (v) failed to pay amounts they owed to Liberty.

5.     Since termination, Beckwith and LTS Wilmington have breached their post-termination obligations under the franchise agreements by: (i) at least as of January 24, 2023, operating a competing business known as "Tax Topic" at the former franchise location, in violation of the post-termination obligations under the franchise agreements; (ii) soliciting Liberty customers to have Tax Topic prepare their taxes instead of Liberty; (iii) refusing to surrender or assign to Liberty the lease and phone number for one of the franchise locations; (iv) continuing to use Liberty's trademarks and trade dress without consent; and (v) failing to return Liberty's confidential information and client files. Williams encouraged, induced and caused Beckwith and LTS Wilmington to commit those breaches, and by doing so he tortiously interfered with Liberty's contracts.

6.     Liberty seeks a preliminary injunction: (i) enjoining Defendants, and all those acting by, or in concert with them, from directly or indirectly, for a fee or charge, preparing or

electronically filing income tax returns, or offering Financial Products (as defined in the Franchise Agreements), within the Territory (as defined in the Franchise Agreements) or within twenty-five (25) miles of the boundaries of the Territory, for two years following the entry of the preliminary injunction order; (ii) enjoining Defendants from soliciting Liberty customers to do business with Tax Topic or any other competing business within the Territory (as defined in the Franchise Agreements) or within twenty-five (25) miles of the boundaries of the Territory, for two years following the entry of the preliminary injunction order; (iii) requiring Defendants to remove and forever cease using Liberty's trademarks and trade dress; (iv) requiring Beckwith and LTS Wilmington to execute all documents necessary to assign the leases from Defendants to Liberty or Liberty's new franchisee; (v) requiring Beckwith and LTS Wilmington to surrender or assign to Liberty or Liberty's new franchises the phone number associated with the franchise location; (vi) prohibiting Defendants from using Liberty's client list and confidential Operations Manual; (vii) requiring Defendants to return Liberty's client lists and confidential Operations Manual; and (viii) requiring Beckwith and LTS Wilmington otherwise to comply with all post-termination obligations under the Franchise Agreements.

7.     Liberty also seeks: (i) compensatory damages for Defendants' breaches of contract; (ii) compensatory damages for Defendants' violations of common law; (iii) statutory and compensatory damages for Defendants' violations of the Lanham Act, 15 U.S.C.A. § 1114(1), *et seq.*; (iv) $107,520.53 plus interest in past-due debt; (v) exemplary/punitive damages; (vi) attorney's fees and costs; and (vii) such other relief the Court deems necessary and just.

## PARTIES

8.     Liberty is a Delaware limited liability company with its principal place of business at 2378 Liberty Way, Virginia Beach, Virginia 23456.

9.      LTS Wilmington LLC is a Delaware limited liability company with a principal place of business at 1931 West Fourth Street, Wilmington, DE 19805.

10.     Ashley Beckwith is a resident of Maryland, with a last known address at 2332 Willowvale Drive, Fallston, Maryland 21047.

11.     Courtney Williams is an individual whose current address is unknown to Liberty at this time.

12.     Beckwith is a member of LTS Wilmington. Williams also is an owner of LTS Wilmington and/or controls LTS Wilmington, including, for example, signing leases on its behalf.

13.     Beckwith, Williams and LTS Wilmington are currently doing business as "Tax Topic" at the former Liberty Tax franchise location at 1931 West Fourth Street, Wilmington, Delaware 19805.

## JURISDICTION AND VENUE

14.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (trademark-related claims), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the Lanham Act claims.

15.     This Court has personal jurisdiction over LTS Wilmington because it is a Delaware limited liability company with its principal place of business in Delaware.

16.     This Court has personal jurisdiction over Beckwith because she agreed to submit to this Court's jurisdiction in the franchise agreements, and because of her involvement in the operations of her former Franchise Locations in the Wilmington, Delaware area, such that she could reasonably expect to be haled into Court in Delaware for breaching the franchise agreements.

17.     The Court has personal jurisdiction over Williams because he ran the operations of

Beckwith's former Franchise Locations in the Wilmington, Delaware area, and tortiously interfered with her franchise agreements by inducing Beckwith and LTS Wilmington to launch a competing business at the former franchise location, such that he could reasonably expect to be haled into Court in Delaware.

18.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and/or a substantial part of property that is the subject of the action is located in this District.

## FACTUAL BACKGROUND

### A.     Plaintiff's Franchise System and Trademarks.

19.     Liberty, one of the largest tax franchisors in the United States, is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including in Delaware, where Beckwith operated her Liberty franchise locations.

20.     Liberty owns several trademarks, service marks, logos and derivations thereof, as well as the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the trademarks and service marks.

21.     Liberty owns the service mark LIBERTY TAX SERVICE, Registration No. 2,314,991, which was registered on February 1, 2000.

22.     Liberty owns the service mark LIBERTY TAX, Registration No. 2,465,670, which was registered on July 3, 2001.

23.     Liberty owns the service mark LIBERTY INCOME TAX, Registration No. 2,459,756, which was registered on June 12, 2001.

24.     The service marks described in the foregoing Paragraphs are referred to collectively as "the Marks."

25.    Liberty has spent substantial time and money developing, advertising and promoting the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks.  Franchisees, including Defendants, license the Marks pursuant to franchise agreements.

26.    Liberty promotes the Marks throughout the United States, and has spent substantial time and money to maintain and improve its franchise systems, including, *inter alia*: 1) maintaining and developing service and product quality; 2) developing uniform designs and markings for their services; 3) licensing trademarks and other proprietary information to franchisees; 4) developing and maintaining the integrity of its confidential customer information, pricing structures, business/marketing strategies, operational methods, and promotional plans; and 5) training franchisees.

27.    As a result of those efforts and expenditures, the Marks have become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Liberty's approved sales, operating methods, and procedures.

28.    Liberty's franchise agreements grant franchisees a limited license to use Liberty's confidential information, and to identify as Liberty Tax Service® franchisee using Liberty's registered trademarks and trade dress during the term of the franchise agreements.

**B.    Liberty's Confidential Information.**

29.    Liberty's Franchise Agreements are reasonably and carefully tailored to protect Liberty's valuable confidential information, reputation, goodwill, and other legitimate business interests.

30.    Pursuant to its franchise agreements, Liberty discloses its confidential information, including but not limited to customer names, phone numbers, and other tax return information, as

well as Liberty's operational methods, promotional plans, marketing strategies, pricing structures, business strategies, and training materials (collectively, "Confidential Information"), to franchisees through its confidential Operations Manuals, training manuals, and training programs.

31.    In return, among other things, Liberty's franchisees pay royalties and other fees to Liberty.

32.    Liberty requires that, upon termination, expiration, or nonrenewal of a franchise agreement, the former franchisee agree to cease using and return to Liberty all customer information, client files and Liberty's confidential information including its Operations Manual and any updates thereto.

33.    Liberty has used the Marks, along with the efforts of its hardworking employees, to grow from five offices in 1998 to over 3,000 today, and is now one of the largest tax preparation franchises in the United States.

34.    Liberty's busiest time of the year are the months of January through April, during which time it generates approximately 90% of its annual revenue.

C.    **Beckwith's and LTS Wilmington's Franchise Agreements.**

35.    On December 17, 2015, LTS Wilmington and Beckwith entered into a franchise agreement with Liberty for the Territory designated DE024, with an office at 2005 North Market Street, Wilmington, Delaware 19802 (the "North Market Street Location"). A true copy of the Franchise Agreement for the North Market Street Location is attached as **Exhibit A**.

36.    Also on December 17, 2015, LTS Wilmington and Beckwith entered into a franchise agreement with Liberty for the Territory designated DE009, with an office at 1931 West Fourth Street, Wilmington, Delaware 19805 (the "West Fourth Street Location"). A true copy of the Franchise Agreement for the West Fourth Street Location is attached as **Exhibit B**.

37.    The term of the 2015 Franchise Agreements for both locations was five years. *See* Ex. A–B, at § 2(a).

38.    On June 15, 2021, Defendants renewed the Franchise Agreements for the North Market Street Location and the West Fourth Street Location. True copies of the 2021 Franchise Agreements for the West Fourth Street Location and the North Market Street Location are attached as **Exhibit C** and **Exhibit D**, respectively.

39.    The 2015 and 2021 Franchise Agreements for both locations (i.e., Ex. A–D) are collectively referred to as the "Franchise Agreements." LTS Wilmington is designated as the franchisee under the Franchise Agreements for both locations, but Beckwith signed the agreements on behalf of LTS Wilmington, and agreed to be personally bound by their terms, including all post-termination covenants. (*See* Ex. A–D, § 26).

40.    The provisions of the Franchise Agreements are virtually identical to each other, except as otherwise described herein.

41.    Section 18(a) of the Franchise Agreements states that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any dealings of the parties hereto, or dealings between you and any of the Affiliated Companies." *Id.* at § 18.a.

42.    The Franchise Agreements granted Defendants an exclusive right to operate Liberty franchises within designated territories in and around Wilmington, Delaware (the "Franchise Territories").

43.    The franchised businesses operated pursuant to the Franchise Agreements are collectively referred to herein as the "Franchised Businesses."

44.    Pursuant to the Franchise Agreements, Liberty provided Defendants with training in franchise operation, marketing, advertising, sales, and business systems.

45.     Liberty also provided LTS Wilmington and Beckwith with Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not a part of Liberty's respective business systems.

46.     In exchange for Liberty's grant of franchises allowing LTS Wilmington and Beckwith to "operate a tax return preparation business using [Liberty's] system and [Liberty's] Marks within the [T]erritory," and specifically at the Franchise Locations, LTS Wilmington and Beckwith agreed to certain obligations set forth in the Franchise Agreements.  *Id.* at § 1.

47.     Under Section 6 of the Franchise Agreements, LTS Wilmington and Beckwith are obligated to "begin operations and be open for business no later than January 2" following the effective date of the Franchise Agreement and for every year thereafter.  *Id.* at § 6.d.

48.     Under Section 6 of the Franchise Agreements, LTS Wilmington and Beckwith are obligated to "exercise [their] best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual."  *Id.* at § 6.e.

49.     Under Section 7 of the Franchise Agreements, LTS Wilmington and Beckwith are obligated by May 30 of each year to "send Liberty an unaudited profit and loss statement of the Franchised Business . . . for the twelve (12) month period ending April 30."  *Id.* at § 7.b.

50.     Under Section 8 of the Franchise Agreements, Liberty is entitled to terminate the Franchise Agreements "without notice and opportunity to cure" if LTS Wilmington and Beckwith "abandon the Franchised Business or discontinue the active operation of any active office of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible or where specifically approved by Liberty in writing thereto."  *Id.* at § 8.b.(iv).

51.    Liberty also is entitled to terminate the Franchise Agreements "without notice and opportunity to cure" if LTS Wilmington and Beckwith "fail to open for business in the Territory by January 2 . . . ." *Id.* at § 8.b(v).

52.    Liberty is entitled to terminate the Franchise Agreements "with notice and opportunity to cure" if LTS Wilmington and Beckwith "or any entity in which you are affiliated, violate any term or condition of [the Franchise] Agreement, the Operations Manual, or any other agreement with Liberty or the Affiliated Companies." *Id.* at § 8.c(i).

53.     Liberty also is entitled to terminate the Franchise Agreements "with notice and opportunity to cure" if "[a]ny amount owing to Liberty or the Affiliated Companies, whether related to the Territory or not, is more than thirty (30) days past due . . . ." *Id.* at § 8.c(ii).

### D.    Post-Termination Obligations Under Franchise Agreements.

54.    Under Section 9 of the Franchise Agreements, LTS Wilmington and Beckwith agreed that, upon expiration, termination, transfer or nonrenewal, they would, among other things, immediately: 1) remove all Marks or other distinguishing indicia from all of your offices and other premises; 2) stop identifying as a Liberty franchisee; 3) pay all amounts owing to Liberty; 4) transfer to Liberty all telephone numbers for the Franchised Businesses; 5) assign to Liberty any interest you have in any lease related to the Franchised Business; 6) deliver to Liberty all customer lists; 7) deliver to Liberty all files containing customer tax returns, files, and records; 8) deliver to Liberty the confidential Operations Manuals and any updates; and 9) adhere to all applicable contract provisions, including the post-term covenants not to compete and not to solicit. *Id.* at § 9.

55.    More specifically, under Section 9(f) of the Franchise Agreements, Defendants agreed upon termination to "assign to Liberty (if Liberty elects) any interest that you have in any

lease, sublease or any other agreement related to the Franchised Business." *See* **Exs**. **E** and **F** at §

9(f).

56.    Under Section 10(e) of the Franchise Agreements, Defendants agreed upon

termination to "use reasonable good faith efforts to help Liberty secure possession of the office

locations through a lease assignment or otherwise." *Id.* at § 10(e).

57.    Under Section 10(e), Defendants "agree[d] to use reasonable, good faith efforts to

ensure that, for a twenty-four (24) month period after non-renewal or termination of this

Agreement, no person or entity will offer income tax preparation at the properties where your

former Liberty offices were located." *Id.*  Section 10(f) defines "good faith efforts" as including

"a duty not to sub-lease or assign the leases of your office location to a person or entity who will

offer income tax preparation at such office locations." *Id.*

58.    Under Section 10(e) of the Franchise Agreements, LTS Wilmington and Beckwith

agreed that "upon the termination or expiration of this Agreement, if Liberty or a duly authorized

Liberty franchisee desires to use any of your former Liberty office locations in the Territory, you

will use reasonable good faith efforts to help Liberty secure possession of the office locations

through a lease assignment or otherwise." *Id.* at § 10.e.

59.    Under Section 10(b) of the Franchise Agreements, LTS Wilmington and Beckwith

agreed to a post-termination covenant not to compete for "a period of two (2) years following the

termination, expiration, transfer or other disposition of the Franchised Business . . . [and] not to

directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer

Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the

Territory except, if applicable, in your capacity as a [Liberty]  franchisee pursuant to a valid

[Liberty]  franchise agreement." *Id.* at § 10.b.

60.     Under Section 10(d) of the Franchise Agreements, LTS Wilmington and Beckwith agreed to a post-termination covenant not to solicit, which states that "[f]or a period of two (2) years following the termination, expiration, transfer, or other disposition of the Franchised Business," they would "not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that [they] were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products except, if applicable, in your capacity as a [Liberty] franchisee pursuant to a valid [Liberty]  franchise agreement." *Id.* at § 10.d.

61.     LTS Wilmington and Beckwith agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." *Id.* at § 10.h.

62.     LTS Wilmington and Beckwith agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that Liberty is "entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *Id.* They further agreed to "waive any requirement that Liberty post a bond related to . . . injunctions requested as a result of an alleged violation of Sections 9 and 10." *Id.*

### E.    Franchise Agreement provisions concerning Liberty's Confidential Information.

63.     In Section 12 of the Franchise Agreements, LTS Wilmington and Beckwith acknowledged that information provided by Liberty regarding, *inter alia*, its respective methods, techniques, formats, specifications, procedures, information, systems, and customer and marketing information was confidential, and was to be used only in connection with the operation of the Franchised Business.

64.    In Section 12(a) of the Franchise Agreements, LTS Wilmington and Beckwith agreed that "[d]uring the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure." *Id.* at § 12.a.

65.    In Section 12(c) of the Franchise Agreements, LTS Wilmington and Beckwith agreed to (a) "refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement;" (b) "maintain absolute confidentiality of Confidential Information during and after the term of this Agreement;" (c) "not make unauthorized copies of any portion of Confidential Information;" and (d) "adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information." *Id.* at § 12.c.

**F.    The Post-Termination Obligations are Necessary to Protect Liberty's Goodwill.**

66.    The post-termination covenants not to compete in Section 10(b) and the covenant not to solicit in Section 10(d) of the Franchise Agreements are necessary to protect Liberty's legitimate, protectable interest in their respective franchise businesses, including:

    a.    maintaining and protecting Liberty's goodwill and customer loyalty;

    b.    retaining customer relationships;

    c.    Liberty's interests in their customer lists, customer identification, tax returns, and other Confidential Information; and

     d.   preserving Liberty's ability to facilitate the operation of Liberty franchises at the current Franchise Locations.

**G.**    **Defendants' In-Term Breaches of the Franchise Agreements, and Liberty's Termination of the Franchise Agreements.**

67.    While at all relevant times Beckwith has maintained possession and control over the West Fourth Street Location on paper, her brother, Williams, actually ran the day-to-day operations of the West Fourth Street Location.

68.    On or about January 2022, Williams asked Clifford Birnbaum ("Birnbaum"), Liberty Regional Director, to send Liberty Market Manager Patricia Bowersfield to take tax preparer certification tests for his employees so that they could prepare tax returns. Williams stated that otherwise Defendants would not be able to open for the 2022 tax season. Birnbaum responded by telling Williams that to do so would be illegal and refused his request.

69.    Subsequently, in violation of the Franchise Agreements, Defendants did not operate either the West Fourth Street Location or the North Market Street Location as Liberty franchises during the 2022 tax season.

70.    On June 9, 2022, Liberty sent Notices to Cure Default to Defendants, notifying them that they were in breach of the Franchise Agreements for, among other things: 1) failure to continue active operations during Tax Season; 2) failure to maintain required business hours during off-season; 3) failure to submit a budget ; and 4) past due monies owed. True copies of the Notices to Cure Default are attached as **Exhibit E**.

71.    On June 20, 2022, Liberty sent Defendants a Notice to Cure and Advance Notice of Termination, reiterating Defendants' violations of the Franchise Agreements and notifying Defendants that failure to cure those violations would result in termination of their Franchise Agreements, effective September 20, 2022. A true copy of the Notice to Cure and Advance Notice of Termination is attached as **Exhibit F**.

72.     Defendants failed to cure the breaches identified in the Notices to Cure and the Advance Notice of Termination.  On September 20, 2022, Liberty notified Defendants by letter that they had terminated the Franchise Agreements pursuant to Sections 6.d, 6.e, 7.b, 8.b(iv), 8b(v), 8.b(xii), 8.c(i), and 8.c(ii).  The letter directed Defendants to comply with their post-termination obligations, including, but not limited to, "cease using and forever refrain from using and disclosing [Liberty's] confidential information;" upon [Liberty's] request, provide to [Liberty] any or all equipment, signs, trade fixtures and furnishings used in the Franchised Business;" "upon [Liberty's] request, assign any interest you have in any lease;" payment of "all monies owing" to Liberty; delivering to Liberty "all paper and electronic copies of your customer lists, tax returns, files and records;" and delivering to Liberty "the Operations Manuals and all updates which [Liberty] loaned to you."  A true copy of the September 20, 2022 letter is attached as **Exhibit G**.

## H.     <u>Defendants' Post-Termination Breaches of the Franchise Agreements</u>

73.     Since termination of the Franchise Agreements, Beckwith and Wilmington LTS, acting in concert with Williams, have breached post-termination obligations in the Franchise Agreements by, among other things: (i) failing and refusing to assign the leases and telephone numbers for the Franchise Locations to Liberty; (ii) opening a competing business using the "Tax Topic" name at the West Fourth Street Location; (iii) soliciting Liberty customers to do business with Tax Topic instead of Liberty; (iv) continuing to display Liberty's trademarks and trade dress at the West Fourth Street Location even as they operate a competing business there; (v) failing to deliver to Liberty all customer files including client lists, customer tax returns, and other records; (vi) failing to deliver to Liberty the confidential Operations Manuals and updates; (vii) failing use reasonable good faith efforts to help Liberty secure possession of the office locations; and (viii) failing to pay amounts they owe to Liberty.

15

74.    On November 18, 2022, Liberty sent Beckwith and LTS Wilmington a Post-Term Notice to serve as a final reminder of the following obligations under the Franchise Agreements: (1) Defendants must deliver to Liberty "any original and all copies, including electronic copies of media, of lists and other source information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised business;" (2) Defendants must deliver to Liberty "any original and all copies, including electronic copies and media containing customer tax returns, files, and records;" (3) "[f]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . [Defendants] agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory;" and (4) Defendants must "[p]ay to Liberty all amounts owing to Liberty, whether related to the Territory or not."  A true copy of the November 18, 2022 letter is attached as **Exhibit H**.

75.    Liberty further informed Beckwith and LTS Wilmington that failure to comply with the enumerated obligations would "result in legal action taken against you to ensure that no further breach occurs, and that Liberty is fairly compensated for any damages caused by such breach."  *Id.*

> **(a)    Defendants have failed to assign the leases and telephone numbers to Liberty as the Franchise Agreements require.**

76.    Defendants are interfering with Liberty's power of attorney to effectuate assignment of the leases at the West Fourth Street Location.

77.    Defendants breached Sections 9(f) and 10(f) of the Franchise Agreements by failing to assign the leases for the locations to Liberty, and otherwise interfering with Liberty's and its new franchisee's efforts to take possession of the locations.

> **(b) Defendants Announce That They Plan to Open a Competing Tax Preparation Business at the Former Franchise Location.**

78.     Following termination, Williams spoke with Felix Strater, the landlord of the West Fourth Street Location, and told him that Defendants would not vacate the premises as Liberty had requested, and further stated that Defendants intended to operate their own tax business at that location and that they would open their own tax business if they could not sell the Liberty location.

79.     Shelby Jones ("Jones") purchased Franchise Territory DE009 after Defendants' termination.  Because there has been a Liberty tax office located at 1931 West Fourth Street, Wilmington, DE 19805 since at least 2010, Jones wanted to operate his franchise from that location.

80.     Jones arranged to meet with Williams at the location on or about December 22, 2022 to come to an agreement whereby Williams would vacate the West Fourth Street Location. Williams, however, called Jones and said that he could not locate the keys and did not show up for their meeting.

81.     Jones arranged a subsequent meeting with Williams on or about December 29, 2022.  Williams again did not show up at the agreed upon time and has not answered further communication attempts by Jones.

82.     LTS Wilmington remains the lessee of the West Fourth Street Location, on a month-to-month basis, pursuant to a lease which Williams signed on behalf of LTS Wilmington. Defendants currently maintain control over the premises at the West Fourth Street Location.

   **(c) Defendants Open a Competing Tax Business and Begin Soliciting Liberty Customers.**

83.     Beginning on January 14, 2023 in violation of the Section 10(b) of the Franchise Agreement, Defendants began advertising a competing tax business at the Fourth Street Location, using the name "Tax Topic." A true copy of a picture taken of the competing business taken on

January 14, 2023 appears below as Figure 4.

> Fig. 4 (displaying new signage for competing tax business, Liberty Tax signage on front door, and phone number for the West Fourth Street Location, photo taken on or around



January 15, 2023)

84.     Williams has contacted former Liberty Tax customers who had their taxes prepared at the West Fourth Street Locations, and has encouraged and directed them to visit Tax Topic instead of Liberty to have their taxed prepared. Attached as **Exhibit I** is a text message

that Williams sent to a Liberty customer, in which he stated that "(Tax Topic) friendly Liberty Tax staff took over the business and is continuing as Tax Topic. File your taxes with us and get 50 dollars … Same staff same location…"

85.     A former employee who worked at the West Fourth Street Location for Williams when it was a Liberty franchise location has posted photographs on Instagram promoting the new Tax Topic business at that location, and has stated that she did so to help her friend Williams launch his new business.

**(d) Defendants' Use of Trademarks After Termination**

86.     Defendants have continued to display Liberty Marks at the West Fourth Street Locations since termination of the Franchise Agreements, and have continued to do so even since launching their competing "Tax Topic" business at the location. They have thereby infringed Liberty's Marks.

87.     *See Fig. 1,* a photo taken in December 2022 showing the Liberty trademark displayed on the door of the West Fourth Street Location. In violation of the Franchise Agreement, as Fig. 1 indicates below, Defendants continue to use Liberty Marks in the form of signage on the front door of the West Fourth Street Location.

88.     Defendants also continued to use a Liberty Tax floor mat displaying a Liberty trademark at the West Fourth Street Location in violation of the Franchise Agreements.  *See* Fig. 2, displaying the Liberty Tax floor mat in February 2022, and Fig. 3, displaying the same Liberty Tax floor mat in December 2022, as viewed from outside the front door of the West Fourth Street Location.



Fig. 1 (view of Liberty signage on front door of the West Fourth Street Location, photo taken December 23, 2022)



Fig. 2 (Liberty Tax floor mat at the West Fourth Street Location, photo taken February 4, 2022)



Fig. 3 (Liberty Tax floor mat, as viewed from outside the front door of the West Fourth Street Location, photo taken December 23, 2022)

89.    Photographs of the West Fourth Street Location taken on or around January 15, 2023 show that  Liberty Tax signage remains on the front door and the phone number for the West Fourth Street Location remains prominently displayed.  *See* Figure 5 below.



Fig. 5 (highlighting Liberty Tax signage on front door after new competing tax business was opened, photo taken on or around January 15, 2023)

**(e) Defendants Begin to Prepare Tax Returns at Former Franchise Location**

90.    As of January 24, 2023, Defendants were open for business and preparing tax returns at the West Fourth Street Location. Witnesses observed customers in the store.

91.    Photographs of the West Fourth Street Location taken on or around January 24, 2023 show that Liberty Tax signage remains on the front door to the business and the phone number to the West Fourth Street remains prominently displayed. See Figure 6 below.



Figure 6 (highlighting illuminated open sign and Liberty Tax signage remaining on front door)

### (f) Liberty's Good Will at West Fourth Street Location

92.    In operating at the West Fourth Street Location since 2010, Liberty developed customer goodwill and loyalty. The goodwill and customer loyalty that Liberty established and maintained at the Franchise Location is damaged every day that Defendants refuse to surrender and assign the lease and phone number associated with the West Fourth Street Location, operate a competing business, and continue to use Liberty's Marks. Liberty will lose customer relationships

and revenue every time a customer returns to the location to have their taxes prepared, and Liberty is no longer operating at that location. The harm is particularly significant because Defendants have opened a competing business at that location. Once a customer is lost to a competitor, it is difficult to win the customer back.

<strong>(g) Beckwith and LTS Wilmington owe Liberty $107,520.53.</strong>

93.     LTS Wilmington and Beckwith have failed to pay past due accounts receivable debts due and owing to Liberty in the amount of at least $107,520.53, plus interest.

<strong>(h) Refusal to Return Confidential Information</strong>

94.     Following termination of the Franchise Agreements, Defendants failed to return to Liberty's client files and Liberty's other confidential information, including Liberty's confidential Operations Manual, and are continuing to use Liberty's Marks.

95.     Upon information and belief, Defendants plan to use Liberty's Confidential Information, including customer lists and client files, to solicit Liberty's customers and operate a competing tax preparation business in violation of the post-termination obligations to which Defendants agreed.

96.     Upon information and belief, Defendants will continue to offer electronic filing of tax returns as a competing business at the West Fourth Street Location, and use Liberty's Confidential Information in violation of Defendants' non-compete and non-solicit covenants under the respective Franchise Agreements.

<strong>(i) Irreparable Harm</strong>

97.     Defendants' operation of a competing business at the West Fourth Street Location, refusal to surrender the lease and telephone number for the location, use of Liberty's Marks, and use of Liberty's confidential client information, has caused and will continue to cause irreparable damage to Liberty's reputation and goodwill, and has also caused monetary damage.

## COUNT I
### *Breach of the Franchise Agreements vs. LTS Wilmington and Beckwith*
### *(Equitable Claim)*

98.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

99.    The Franchise Agreements are valid and enforceable.

100.    Liberty performed every obligation and condition required under the Franchise Agreements.

101.    Liberty effectively terminated the Franchise Agreements on September 20, 2022 pursuant to Sections 6, 7, and 8 of the respective Franchise Agreements.

102.    Defendants breached the Franchise Agreements by, among other things, (i) refusing to surrender or assign the leases and telephone numbers for the West Fourth Street Location, thereby preventing Liberty's new franchisee from operating out of that former Franchise Location; (ii) opening a competing tax preparation business at the West Fourth Street Location using the "Tax Topic" name; (iii) soliciting Liberty customers to do business with Tax Topic instead of Liberty; (iv) displaying Liberty signage and trademarks at the West Fourth Street Location even after they opened a competing tax preparation business; and (v) failing to return Liberty's confidential Operations Manual and client files to Liberty, and presumably are using them to unlawfully compete against Liberty.

103.    Defendants have further materially breached Section 9(f) of the Franchise Agreement by not assigning the leases of the Liberty Locations to Liberty and otherwise interfering with Liberty's right to act as Defendants' lawful agent and attorney-in-fact for the purpose of taking necessary action to complete assignment of the leases, as well as not assigning the phone numbers associated with the West Fourth Street Location.

104.    Defendants' post-termination obligations survive the termination of the Franchise

Agreements.

105.    The foregoing breaches of the Franchise Agreements are material.

106.    As a direct and proximate result of these breaches, Liberty incurred and will continue to incur substantial losses, fees, and expenses for which Defendants are liable.

107.    As a result of Defendants' past, present, and potential breaches, Liberty suffered and will continue to suffer actual, substantial, and irreparable damages, including but not limited to:

      a.   Loss of customer goodwill and loyalty;

      b.   Loss of business opportunities and relationships to provide tax preparation services and related services;

      c.   Loss of customers;

      d.   Loss of profits;

      e.   Loss of franchisee stability;

      f.   Loss of ability to sell other franchises;

      g.   Loss of value in confidential business information;

      h.   Loss of competitive advantage in each of the Franchise Territories;

      i.   Attorneys' fees; and

      j.   Cost of this action.

108.    Liberty has been and will continue to be irreparably harmed by Defendants' actions, and monetary damages are an insufficient remedy in that Liberty can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's Confidential Information, goodwill, customer loyalty, and their ability to sell franchises, all of which are caused by Defendants' ongoing violations.

109.    Upon information and belief, these breaches have caused and will continue to cause confusion in the minds of consumers between the services of Liberty and Defendants, and pose a threat to the confidentiality and value of Liberty's Confidential Information.

110.    Unless their wrongful conduct is enjoined, Defendants will continue to breach the non-competition and non-solicitation covenants and continue to use Plaintiff's Confidential Information.

## COUNT II
### Breach of the Franchise Agreements vs. LTS Wilmington and Beckwith
### (Monetary Claim)

111.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

112.    The Franchise Agreements are valid and enforceable.

113.    Liberty performed every obligation and condition required of it under the Franchise Agreements.

114.    Under the Franchise Agreements, Defendants were required to: (1) pay all amounts due and owing to Liberty immediately following termination of the Franchise Agreements; (2) immediately return Liberty's confidential Operations Manual and to never use or disclose Liberty's Confidential Information following the termination of the Franchise Agreements; (3) deliver to Liberty all paper and electronic copies of their customer lists, tax returns, files, and records; (4) transfer all telephone numbers associated with their former Liberty franchise; (5) assign any interest in any lease, sublease, or any other agreement related to the Franchised Businesses; and (6) cease using and/or disclosing Liberty's confidential information.

115.    Defendants have breached the Franchise Agreements by: (i) failing to pay all royalties and other amounts they owe to Liberty; (ii) refusing to surrender or assign the leases and telephone numbers for the West Fourth Street Location, thereby preventing Liberty's new franchisee from operating out of that former Franchise Location; (iii) opening a competing tax

preparation business at the West Fourth Street Location; (iv) displaying Liberty signage and trademarks at the West Fourth Street Location even after they opened a competing tax preparation business; and (v) failing to return Liberty's confidential Operations Manual and client files to Liberty, and presumably are using them to unlawfully compete against Liberty.

116.    Each of Defendants' foregoing breaches constitute a material breach of the Franchise Agreements.

117.    As a direct and proximate result of Defendants' breaches of the Franchise Agreements, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which Defendants are liable, including but not limited to, compensatory damages, consequential damages, and disgorgement of Defendants' profits.

118.    By retaining Liberty's confidential information, including customer lists and the Operations Manual, and by refusing to assign to Liberty the lease and all phone number associated with the Franchise Locations, Defendants intentionally and maliciously planned to violate the post-termination non-competition covenants.

119.    Because Defendants intentionally and maliciously violated the post-termination covenants of the Franchise Agreements, Defendants are entitled to punitive damages.

<u>COUNT III</u>
**Federal Trademark Infringement vs. All Defendants**

120.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

121.    Liberty is the owner of the trademarks "LIBERTY TAX SERVICE," "LIBERTY TAX" and "LIBERTY INCOME TAX," among other registered trademarks.

122.    Defendants are using the Marks or substantially similar marks at the West Fourth Street Location to identify and/or conflate them with their competing tax preparation services.

28

123. Defendants' use of the Marks, especially in conjunction with competing tax preparation services, creates a likelihood of confusion among customers.

124. Liberty did not consent to Defendants' use of the Marks or substantially similar marks for the sale, offer of sale, or advertising of Defendants' goods or services and Defendants' use is likely to cause confusion, cause mistake, and to deceive the public.

125. Defendants are therefore infringing the Marks in violation Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

126. Through their unlawful use and display of the Marks, Defendants have and will continue to profit, and Liberty has been and will continue to be damaged.

127. Defendants' acts have been and are being done knowingly and intentionally to cause confusion, cause mistake, and/or to deceive.

128. As a result, Liberty has suffered and continues to suffer and incur monetary damage and irreparable harm to its goodwill and reputation, as well as to the integrity and value of the Marks.

### COUNT IV
***Tortious Interference with Contracts (the Franchise Agreements) vs. Williams***

129. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

130. Williams knew that LTS Wilmington and Beckwith were bound by the Franchise Agreements with Liberty, and knew of the terms of the Franchise Agreements through his involvement in operating the Franchise Locations and through his own prior experience with Liberty franchises.

131. Williams intentionally encouraged, induced and caused LTS Wilmington and Beckwith to breach the Franchise Agreements with Liberty, including by acting in concert with them to open a competing business under the name "Tax Topic" at the West Fourth Street Location

in violation of the non-compete obligations under the Franchise Agreements; and by acting in concert with LTS Wilmington and Beckwith to use Liberty's Marks to support their new competing business.

132.    LTS Wilmington and Beckwith actually did breach their Franchise Agreements with Liberty, and Williams's intentional acts to encourage, induce and cause such breaches was a substantial factor in bring about the breaches.

133.    Williams had no legitimate basis or justification for interfering with the Franchise Agreements as set forth above.

134.    As a result of Williams's tortious interference with the Franchise Agreements, Liberty has suffered and continues to suffer and incur monetary damage and irreparable harm to its goodwill and reputation, as well as to the integrity and value of the Marks.

## PRAYER FOR RELIEF

WHEREFORE, Liberty pray for judgment against Defendants as follows:

1.    For the following injunctive relief:

    A.    Enjoin Beckwith, Williams, and LTS Wilmington, each individually and doing business as Tax Topic, and all those acting in concert with them, from operating a competing tax business at the West Fourth Street location.

    B.    Enjoin Beckwith, Williams, and LTS Wilmington each individually and doing business as Tax Topic, and all those acting in concert with them, from soliciting Liberty customers to do business with Tax Topic or any other competing business, in or within 25 miles of the Franchise Territories, for two years from the date of the injunction.

    C.    Order Beckwith and LTS Wilmington to comply with all post-termination obligations under the Franchise Agreements;

    D.    Order Defendants to immediately and forever cease using Liberty's Marks;

    E.    Order Beckwith and LTS Wilmington to assign the leases for each of the Franchise Locations to Liberty, and to refrain from interfering with Liberty's right to act as Defendants' lawful agent and attorney-in-fact for the purpose of taking necessary action to complete assignment of the leases;

      F.      Enjoin Defendants from using any of Liberty's Confidential Information;

      G.      Order Defendants to return all of Liberty's Confidential Information including all Liberty client files;

      H.      Order Defendants to deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Businesses;

      I.      Order Defendants to deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records;

      J.      Order Defendants to deliver to Liberty all copies of the confidential Operations Manual and any updates;

      K.      Enjoin Defendants from using or disclosing any of Liberty's Confidential Information, including, without limitation, methods of operations, customer information, and marketing information; and

      L.      Order Defendants, and all those acting by, through or in concert with them, to transfer to Liberty all telephone numbers, listings, and advertisements used in relation to the Franchised Businesses.

2.      For an accounting of Defendants' revenues and profits for any and all tax return preparation and electronic filing performed since January 1, 2022;

3.      For a monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, exemplary damages, and disgorgement of profits;

4.      For a monetary award against Defendants for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

5.      For pre- and post-judgment interest; and

6.      For such other relief as the Court deems just and appropriate.

Respectfully submitted this 1st day of February, 2023.

Respectfully submitted,

**GORDON REES SCULLY
MANSKUHANI, LLP**

/s/ Michael C. Heyden, Jr.
Michael C. Heyden, Jr. (#5616)
824 N. Market Street, Suite 220
Wilmington, DE 19801
D: 302-992-8954
F: 302-724-6444
mheyden@grsm.com

 *(Of Counsel - pro hac vice motion forthcoming):*
**James Messenger, Esq.**
**GORDON REES SCULLY MANSUKHANI, LLP**
21 Custom House Street, Fifth Floor
Boston, MA 02110
T: (857) 263-2000
*jmessenger@grsm.com*

**Peter G. Siachos**
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY  10004
T: (646) 808-6358
*psiachos@grsm.com*
***Attorneys for Plaintiff JTH Tax LLC d/b/a Liberty
Tax Service***

DocuSign Envelope ID: CC81EBE4-0268-4232-9277-189FB7823EBB

## **VERIFICATION**

CLIFFORD BIRNBAUM does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint and know the content thereof and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty employees, representatives, and franchisees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 30th day of January, 2023.

DocuSigned by:

3A79B8B6B10F47C...

Cliff Birnbaum